# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 16, 2004 Session

## STATE OF TENNESSEE v. CHAD ALLEN CONYERS

**Direct Appeal from the Criminal Court for Knox County**
**No. 75188     Richard R. Baumgartner, Judge**

---

**No. E2004-00360-CCA-R3-CD - Filed March 9, 2005**

---

The Defendant, Chad Allen Conyers, pled guilty to voluntary manslaughter. The trial court deferred entry of a judgment of conviction and placed the Defendant on judicial diversion for fifteen (15) years. The Defendant was subsequently charged with violating the terms of his probation. After an evidentiary hearing, the trial court revoked the Defendant's probation. The trial court subsequently sentenced the Defendant to four years, split confinement. The Defendant now appeals both the revocation of his probation and the manner of service of his sentence. Finding that the trial court abused its discretion in revoking the Defendant's probation, we reverse the judgment of the trial court and order that the Defendant's probation be reinstated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

David Eldridge, Knoxville, Tennessee, for the appellant, Chad Allen Conyers.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

In April 2002, the Defendant visited the Carousel bar in Knox County, Tennessee. When he left, he was accompanied by the victim, Joseph Camber. At the Defendant's plea hearing, the prosecutor recited the following statement of facts concerning what happened thereafter:

> About 7 a.m. on Sunday the 21st the victim's body was found in a grassy area adjacent to a parking lot near Cumberland and Eleventh Street here in the City of Knoxville, and then that was in a direct path--footpath, if you will, from the Carousel to the Baptist Hospital area. The body had several cuts and abrasions on the arms and to the back, consistent with some type of struggle. The victim's pants were pulled down below his knees, suggesting some sort of sexual circumstance surrounding this apparent struggle.
>
> The cause of death was later determined to be manual strangulation. Testing of the fingernail clippings from the victim indicated the presence of human DNA material. This DNA material was later determined to match this defendant conclusively.
>
> The defendant was at some time later located in Virginia and interviewed by detectives from the Knoxville Police Department. The defendant, in his statement to the police, acknowledged meeting the victim there at the Carousel and spending some time with him there, as he also acknowledged leaving the club about the same time as Mr. Camber, but denied to the police having anything to do with his death.

After pleading guilty in March 2003 to the voluntary manslaughter of Mr. Camber and being placed on judicial diversion,[1] the Defendant returned to his home in Virginia, with the trial court's permission. He obtained two jobs, working as a maintenance ranger at a state park, and as a warehouse worker. On July 31, 2003, the Defendant visited the Sears store at a mall in Virginia Beach, intending to purchase a vacuum cleaner. What occurred during his visit is a matter of some dispute, about which two witnesses testified at the Defendant's probation revocation hearing.

Detective Jason Staab-Peters of the Virginia Beach Police Department testified that he was investigating "illicit sexual activity that occurs in a men's restroom at the Sears store in . . . a mall in Virginia Beach." On July 31, 2003, Det. Staab-Peters entered that restroom and noticed that someone was in the middle of three partitioned stalls. He entered a next-door stall, lowered his trousers, and sat down. According to the detective, the person next door, later identified as the Defendant, began tapping his foot next to the detective's foot underneath the stall partition. Det. Staab-Peters testified that, based on his training and experience, such tapping was "a method of

---

[1] See Tenn. Code Ann. § 40-35-313. Although commonly referred to as "judicial diversion," the statute refers to a defendant as being placed on "probation." Id.

communication between men in these bathrooms for various sexual acts." "In fact," the detective explained, "there's writing on the wall that describes various sex acts in terms of the number of taps."

The detective testified that, after a brief "exchange" of these taps, he heard noises that sounded like masturbation. The Defendant then stood up and "peep[ed]" over the top of the partition between the stalls, looking, according to Det. Staab-Peters, into the detective's "groin area." Det. Staab-Peters testified that the two men made eye contact. The Defendant then sat back down and Det. Staab-Peters asked him, "What do you want?" The Defendant replied, "I'm jerking off." The detective asked him, "What are you looking for?" The Defendant responded, "To bust a nut," which the detective interpreted to mean ejaculate. Det. Staab-Peters then issued an arrest signal to other officers and the Defendant was arrested shortly thereafter.

The Defendant testified that he went into the Sears men's room and entered the middle of three bathroom stalls. He lowered his trousers and sat down. Approximately one minute later, another person entered a next-door stall. This person "initiated a conversation after about thirty seconds." The person asked the Defendant if he came there often, asked him what he liked to do, and stated, "my friends say this is the best place to come." The Defendant took these statements as a "come-on" and replied, "I'm not like that." According to the Defendant, the person continued speaking to him--so the Defendant stood up, "grabbed" the partition between the two stalls, "glanced over,"and said, "What's up with you?" The Defendant then sat back down. A short time later, the Defendant was arrested.

The Defendant denied that he had been masturbating. He stated that he did not recall whether he tapped his foot, but maintained that he did not tap his foot to indicate an interest in sex. He did not attempt to hide his effort to look over the stall partition. The Defendant stated that Det. Staab-Peters lied during his testimony.

After his arrest, the Defendant was charged with violating Virginia Beach's municipal ordinance section 23-45, titled "Peeping toms." That ordinance provides, in pertinent part,

> It shall be unlawful for any person to use a peephole or other aperture to secretly or furtively peep, spy or attempt to peep or spy into a restroom, dressing room, locker room, hotel room, motel room, tanning bed, tanning booth, bedroom or other location or enclosure for the purpose of viewing any nonconsenting person who is totally nude, clad in undergarments, or in a state of undress exposing the genitals, pubic area, buttocks or female breast and the circumstances are such that the person would otherwise have a reasonable expectation of privacy.

Virginia Beach, Va., code 1965 § 23-45(b).

Following the Defendant's arrest, he was charged with violating the terms of his judicial diversion probation on the basis that he "failed to comply with the conditions of his probation by committing the crime of PEEPING INTO AN OCCUPIED DWELLING, occurring July 31, 2003, Virginia Beach, Virginia . . . ." At the probation revocation hearing, at which the trial judge heard the above-recited proof, the trial judge ruled as follows:

> I'm not here to determine whether or not he's going to be convicted of an offense in Virginia Beach, Virginia. I'm here to determine whether or not he's engaged in conduct which would justify the revocation of his judicial diversion status in this case that's pending before this Court.
> First of all, let me say that after having listened to the testimony here, I credit the testimony of Detective Staab-Peters as the more reliable testimony.
> I believe that you were in that rest room, Mr. Conyers, for the purpose of some kind of sexual activity, whatever that is, on that--on July 31st of this year. I believe that you initiated this contact with him by the tapping of your foot. You knew exactly what you were doing. Whether or not you violated a statute of the state of Virginia is not my concern.
> I do not believe this is the kind of conduct we anticipated you would engage in if we put you on diversion. Therefore, I find you in violation of your diversion status, revoke you from that status, and enter judgment in this case.

The Defendant now contends that the trial court erred in revoking his probation. We agree.

**STANDARD OF REVIEW**

As this Court has previously determined,

> [a] defendant who pleads guilty or is found guilty of certain offenses may be allowed judicial diversion, a statutory process by which the trial court may defer further proceedings without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 2001). The defendant is placed on probation with reasonable conditions for a specified period of time not exceeding the maximum sentence for the offense. Id. If the defendant then violates the terms and conditions of the diversionary probation, the trial court may enter an adjudication of guilt and proceed to sentence the defendant. Id. at (a)(2).

> If it is alleged that a defendant on judicial diversion has violated the terms and conditions of diversionary probation, the trial court should follow the same procedures as those used for ordinary probation revocations. State v. Johnson, 15 S.W.3d 515, 519 (Tenn. Crim. App. 1999). These procedures are set forth in Tennessee Code Annotat[ed] section 40-35-311 (Supp. 2001). Id. When a trial court learns a defendant has allegedly violated his or her probation, the trial court should issue a probation revocation warrant. Tenn. Code Ann. § 40-35-311(a) (Supp. 2001).

If the trial court, following a hearing, determines by a preponderance of the evidence that the defendant has indeed violated the conditions of probation, the trial court may revoke the defendant's probation. Id. at (e).

Alder v. State, 108 S.W.3d 263, 266 (Tenn. Crim. App. 2002).

We review a trial court's decision to revoke diversionary probation under an abuse of discretion standard. See State v. Johnson, 15 S.W.3d 515, 517-18 (Tenn. Crim. App. 1999). We will find an abuse of discretion only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. See id.

**ANALYSIS**

Due process requires that a defendant be given advance written notice of the grounds upon which the revocation of his or her probation is to be based. See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973); State v. Michael Harlan Byrd, No. 01C01-9609-CC-00411, 1998 WL 216859, at *5 (Tenn. Crim. App., Nashville, May 1, 1998). The burden then falls on the State to prove the alleged violation by a preponderance of the evidence. See Michael Harlan Byrd, 1998 WL 216859, at *5. The revocation of probation based on grounds not alleged and noticed to the defendant is a violation of due process. See id.

In this case, the Defendant was notified that the State was seeking to revoke his probation on the basis that he had committed the crime of "peeping into an occupied dwelling." However, the trial judge specifically refused to consider whether the Defendant had violated the terms of his probation in this manner, stating "I'm not here to determine whether or not [the Defendant is] going to be convicted of an offense in Virginia Beach, Virginia," and "Whether or not you violated a statute of the state of Virginia is not my concern." Thus, the trial court declined to make any findings with respect to the conduct that was alleged as the basis for revocation of the Defendant's probation. Instead, the trial judge revoked the Defendant's probation after finding that the Defendant was in the Sears restroom "for the purpose of some kind of sexual activity" and that "this [was not] the kind of conduct [the court and the State] anticipated you would engage in if we put you on diversion."

The Defendant was not charged with violating his probation on the grounds that he had sought "some kind of sexual activity." Moreover, the terms of the Defendant's probation do not contain a prohibition against seeking "some kind of sexual activity." The trial court abused its discretion and committed reversible error in revoking the Defendant's probation on this ground.

We further note that the record does not contain sufficient evidence to support the revocation of the Defendant's probation on the ground that he committed the crime of "peeping into an occupied dwelling." The record indicates that the Defendant was tried and acquitted of that charge. The State did not carry its burden of proving that the Defendant violated the terms of his probation as alleged.

-5-

Following its revocation of the Defendant's probation, the trial court sentenced the Defendant to a term of four years with one year to be served in split-confinement in the custody of the Knox County Sheriff. The Defendant also appeals this decision by the trial court. Given our determination that the Defendant's probation must be reinstated, this issue is moot and we decline to consider it.

We reverse the trial court's order of revocation and order that the Defendant's probation be reinstated. We further order that the trial court rescind the Defendant's judgment of conviction, and continue to defer same pending the Defendant's continuing service of his term of judicial diversion. This case is remanded to the trial court for such further proceedings as may be consistent with this opinion.

_____
DAVID H. WELLES, JUDGE